UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BASHAN MURCHISON,                    )
                                     )
        Petitioner,                  )
                                     )
v.                                   )          No. 2:19-CV-00048-JRG-CRW
                                     )
GEORGIA CROWELL,                     )
                                     )
        Respondent.                  )

**MEMORANDUM OPINION**

Now before the Court is a pro se petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 in which Petitioner, a state prisoner, challenges his drug-related convictions arising out of a series of drug buys in 2011 between himself and a confidential informant and the confidential informant and Petitioner's codefendant Garrick Graham [Docs. 2, 2-1]. *State v. Murchison*, No. E2014-01250-CCA-R3-CD, 2016 WL 659844, at *1–4 (Tenn. Crim. App. Feb. 23, 2016) ("*Murchison I*"). Petitioner seeks habeas corpus relief from his convictions by claiming that the selection of the jury for his trial violated his constitutional rights, his counsel was ineffective in various ways, and the cumulative effect of his claims entitles him to relief [Doc. 2; Doc. 2-1]. Respondent filed a response in opposition to the petition [Doc. 14] and the state court record [Docs. 12, 15]. Petitioner filed a reply and manually filed other documents [Docs. 17, 18, 19].

Petitioner also filed a motion to amend his petition [Doc. 26]. The Court initially denied this motion based in part on its finding that the claims therein were time-barred [Doc. 27] but later ordered Respondent to file a response and allowed Petitioner to file a reply [Doc. 28]. Respondent

filed a response [Doc. 32] but Petitioner did not file a reply, and his time for doing so has passed [Docs. 28, 31]. Accordingly, this matter is ripe for review.

After reviewing the parties' filings and the state court record, the Court finds that Petitioner is not entitled to expansion of the record or relief under § 2254. As such, the Court will not hold an evidentiary hearing, *see* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), will **DENY** the petition for a writ of habeas corpus and Petitioner's motion to amend his petition, and will **DISMISS** this action.

## I. PETITIONER'S MANUAL FILINGS

Petitioner manually filed various documents with the Court, including educational and other records [Docs. 18, 19]. However, while Petitioner states in his cover letter for one such filing that the documents therein include "information that was at the disposal of the Attorney General and the State Attorney General in this matter" [Doc. 18 at 1], the documents are not in the state court record [Docs. 13, 15]. Thus, the Court considers these filings as Petitioner seeking to expand the record under Rule 7 of the Rules Governing § 2254 Cases in the United States District Courts.

Under Rule 7, "the judge may direct the parties to expand the record by submitting additional materials relating to the petition." Rule 7(a) of the Rules Governing § 2254 Cases. However, a petitioner seeking to expand the record must meet the same standards as a petitioner seeking an evidentiary hearing. *Samatar v. Clarridge*, 225 F. App'x 366, 375 (6th Cir. 2007) (quoting *Owens v. Frank*, 394 F.3d 490, 499 (7th Cir. 2005)). This requires as follows:

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

2

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)–(B).

It appears that Petitioner requests that this Court review his educational and personal records to support his claim that the lower courts erred in not establishing his mental capacity [Doc. 2 at 7; Doc. 2-1 at 5]. But Petitioner exhausted this claim with the TCCA in his appeal of the denial of his post-conviction petition by alleging that his counsel was ineffective for not thoroughly investigating or using his mental capacity to argue for sentence mitigation [Doc. 12-26 at 26], and the TCCA denied this claim on the merits. *Murchison v. State*, No. E2017-02143-CCA-R3-PC, 2018 WL 3532914, at *12–13 (*Murchison II*). Thus, the record establishes that Petitioner bases the claim for which he seeks to expand the record on a claim that he exhausted with the TCCA, rather than a new constitutional rule or a new factual predicate that he could not have previously discovered. As such, this Court must review this claim based on the same record that was before the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Accordingly, the Court will not review the additional documents in Petitioner's manual filings [Docs. 18, 19], in ruling on the merits of his petition.

## II.    PETITION FOR § 2254 RELIEF

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq.*, a district court may not grant habeas corpus relief for a claim that a state court decided on the merits unless the state court's adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

      (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2). This is a difficult standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**B. Legal Analysis**

Petitioner raises the following claims in his petition for § 2254 relief and his supporting brief [Docs. 2, 2-1]:

      (1)     The state courts erred in finding that his counsel's act of having him sign a paper stating that he would not testify, present evidence, offer any documents, or call any witnesses at trial did not violate his constitutional rights [Doc. 2 at 4; Doc. 2-1 at 2–3];

      (2)     The jury selection process for his trial violated his Equal Protection rights [Doc. 2 at 6; Doc. 2-1 at 4];

      (3)     The state courts erred in finding that counsel had appropriately communicated plea offers to him [Doc. 2 at 7; Doc. 2-1 at 5];

      (4)     The state courts erred by not resolving the questions regarding his mental competency and relying on alleged written statements from Petitioner in the presentence report at sentencing [Doc. 2-1 at 6]; and

      (5)     The cumulative effect of these errors entitles Petitioner to habeas corpus relief [Doc. 2-1 at 7].

However, as the Court will set forth in more detail below, Petitioner procedurally defaulted Claim 1 by not raising it under the same theory to the state courts, and thus the Court cannot address this claim on its merits. Also, to the extent that Claims 2, 3, 4, and 5 raise the same claims

4

in the same manner that Petitioner raised them to the Tennessee Court of Criminal Appeals ("TCCA"), such that Petitioner properly exhausted them, Petitioner has not established that the TCCA based its denial of these claims on an unreasonable application of federal law or an unreasonable determination of the facts based on the evidence. And Claim 5 is not cognizable in this action.

### 1. Claim 1–Ineffective Assistance of Counsel Waiver of Rights

As set forth above, Petitioner first claims that the state courts erred in denying his claim that his counsel's act of advising him by mail to sign a paper stating that he would not testify, present evidence, offer any documents, or call any witnesses at trial violated his constitutional rights [Doc. 2 at 4; Doc. 2-1 at 2–3]. However, Petitioner did not raise such a claim to the TCCA in his direct appeal of his conviction [Doc. 14] or his appeal of the denial of his petition for post-conviction relief [Doc. 26]. Thus, Petitioner procedurally defaulted this claim, and as he has not set forth sufficient grounds to excuse this default, the Court will not address this claim on the merits.

Before a federal court may grant habeas corpus relief to a state prisoner, the prisoner must exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires the petitioner to "fairly present" each federal claim to all levels of the state appellate system by presenting the "same claim under the same theory" up to the state's highest court, *Wagner v. Smith*, 581 F.3d 410, 414, 418 (6th Cir. 2009), to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). Under Tennessee law, presentation of a federal claim to the TCCA is sufficient for exhaustion. Tenn. S. Ct. R. 39 (providing that presentation of a claim to TCCA exhausts state remedies).

A federal court may review a procedurally defaulted claim only where the prisoner shows cause for the default and actual resulting prejudice, or that failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991); *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). A petitioner may establish "cause" by showing an objective external factor impeded counsel's ability to comply with state procedural rules, or that counsel rendered ineffective assistance. *Coleman*, 501 U.S. at 753–54. And the prejudice to overcome a default must "work[] to [Petitioner's] *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Also, a fundamental miscarriage of justice occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

As Petitioner did not raise his this claim for ineffective assistance of counsel in his appeals to the TCCA, he procedurally defaulted it, and he has not set forth any reason for the Court to excuse this default. Rather, he states in his petition that he raised this claim in his post-conviction petition and/or his appeal of the denial of that petition [Doc. 2 at 5]. And in his reply, Petitioner again states that he exhausted this in an appeal [Doc. 17 at 1]. But the record establishes that Petitioner did not raise this claim in his briefs to the TCCA [Docs. 12-14, 12-26].[1] Accordingly, the Court will not address this claim on the merits.

---

[1] Where a state prisoner must raise an ineffective assistance of counsel claim for the first time in a post-conviction petition, ineffective assistance of post-conviction counsel may be "cause" to excuse procedural default of a substantial ineffective assistance of counsel claim. *Trevino v. Thaler*, 133 S.Ct. 1911, 1918–21 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012); *Wallace v. Sexton*, 570 F. App'x 443, 452–53 (6th Cir. 2014). This exception, commonly referred to as the *Martinez* exception, applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014).

In his petition, Petitioner does not indicate that his post-conviction counsel caused his default of his "mail away" ineffective assistance of counsel claim [Doc. 2 at 4; Doc. 2-1 at 2–3], as he must do for the *Martinez* exception to apply. *Hugueley v. Mays*, 964 F.3d 489, 498–99 (6th Cir. 2020) (providing that a petitioner relying on the *Martinez* exception "must still demonstrate that the ineffectiveness of his post-conviction counsel was the 'cause' of his default") (quoting *Trevino*, 569 U.S. at 423). As set forth above, Petitioner instead insists in his filings that he did raise

6

## 2. Claim 2–Jury Selection

Petitioner next claims that the jury selection process for his trial violated his Equal
Protection rights [Doc. 2 at 6; Doc. 2-1 at 4]. Petitioner raised this claim to the TCCA in his direct
appeal of his convictions [Doc. 12-14 at 57–59], and the TCCA denied it by stating as follows:

> Relying on *Batson v. Kentucky*, 476 U.S. 79 (1986), Defendant Murchison argues
> that the exclusion of the only African–American member of the venire from the
> jury violated his constitutional right to equal protection under the law. We disagree.
>
> The record establishes that Defendant is African–American. At the beginning of
> the voir dire, the following exchange took place:
>
> > THE COURT: All right, Ms. Skaggs, are you okay today?
> >
> > MS[.] SKAGGS: I have an infection in my eye.
> >
> > THE COURT: Okay, are you okay to be able to serve on a jury or
> > are you under medical treatment?
> >
> > MS[.] SKAGGS: I just finished dealing with—trying to figure out
> > what it is. I just got my stitches out.
> >
> > THE COURT: Can the attorneys approach here just a second?
> >
> > * * *
> >
> > THE COURT: She doesn't look particularly good.
> >
> > [PROSECUTOR]: And she appears to have been asleep back there.
> >
> > THE COURT: Probably more health issues. I mean I think we ought
> > to excuse her. She's got an infection. I don't know if it's catching
> > or—I don't want the other jurors to be alarmed by that. Do you have
> > any problem with that? I mean she's the only African American—

---

this claim to the TCCA [Doc. 2 at 5; Doc. 17 at 1] even though the record establishes this is not true [Docs. 12-14, 12-26]. And even if the Court could liberally construe Petitioner's post-conviction filings [Doc. 12-22] to raise this claim, his failure to raise it with the TCCA precludes application of *Martinez*. *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply to claims "raised and rejected on the merits by the initial postconviction court [because] ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals"). Thus, the Court will not apply the *Martinez* exception to this claim.

[GRAHAM'S COUNSEL]: Which leads me to the—what I will bring to the Court's attention after we set the jury or whatever, but—

THE COURT: I mean she's the only African [-] American and I'm not trying to use it for that reason but—

[PROSECUTOR]: We had meant to cause to strike her anyway. She wasn't here when—she was late today. She appears to have been asleep—

THE COURT: I can put her under oath—

[GRAHAM'S COUNSEL]: Because of—I'm not—

THE COURT: Well, the Court is concerned about her medical situation but on the other hand if you want me to inquire [further] I can ask the rest of the jury to step out and we can talk to her individually.

[GRAHAM'S COUNSEL]: Judge, in the long run if the Court would be kind enough to do that.

THE COURT: Okay, I'll bring her up. Ms[.] Skaggs, can you come up here just for a second. I need to ask you to raise your right hand because you weren't in here this morning when I put people under oath—

MS[.] SKAGGS: No, sir.

THE COURT:—for jury selection so if you'll raise your right hand. Do you solemnly swear or affirm that you will answer truthfully all quest[i]ons touching upon your competency to serve as a juror in this case.

MS[.] SKAGGS: Yes, sir.

THE COURT: All right, now I can see obviously your eye is swollen a great deal. Are you under the care of a doctor?

MS[.] SKAGGS: Uh-huh (affirmative).

THE COURT: When did - - - did you have an operation?

MS[.] SKAGGS: I had a biopsy and I said the wrong word. It's inflammation. It's a mass of inflammation. It's not an infection.

8

THE COURT: All right, when did you have your surgery?

MS[.] SKAGGS: On the 10th.

THE COURT: The 10th? Okay, so that was last Wednesday?

MS[.] SKAGGS: Uh-huh (affirmative), and I had the stitches removed today.

THE COURT: Okay, are you still—are you in pain?

MS[.] SKAGGS: No, it don't [sic] even hurt.

THE COURT: Well, I'm just asking. Okay, so you don't have an infection then?

MS[.] SKAGGS: No, it's inflammation.

THE COURT: Are you off work or do you work?

MS[.] SKAGGS: No, I go every night.

THE COURT: Okay, where are you working?

MS[.] SKAGGS: FedEx.

THE COURT: Okay, well I guess one of the questions I ask is, again you said infection but you say it's not an infection.

MS[.] SKAGGS: That's right, I said it wrong. I'm sorry.

THE COURT: No, no, there is a little bit of a difference.

MS[.] SKAGGS: Yeah.

THE COURT: Do you feel that you would be able to serve as a juror in this case?

MS[.] SKAGGS: I do[n]'t see why not.

THE COURT: Okay, now have you heard me as I've talked a little about this case. You came in a little bit late. I know you weren't here when I called—

MS[.] SKAGGS: No, I—

9

> THE COURT: Have you heard me as I've introduced these individuals?
>
> MS[.] SKAGGS: Yes.

Ms. Skaggs indicated that she did not know Defendant Graham or Defendant Murchison or any of the other individuals involved in the case. The prosecutor then asked if Ms. Skaggs was able to see okay because the case involved "a lot of video" evidence. Ms. Skaggs responded: "That might be kind of—you know, I suppose just a little problem. If I have to read or something like that." She indicated that she could see out of one eye and that she only wore reading glasses. The court then conducted a jury-out hearing regarding the State's request to excuse Ms. Skaggs as a juror. Defense counsel for Defendant Murchison joined in Defendant Graham's objection to the State's request to strike Ms. Skaggs noting that she was the only African–American on the venire.

In the jury-out hearing, the prosecutor stated the following reason for excluding Ms. Skaggs as a juror:

> Judge, and I think from my observation today, number one she was late to court; one, maybe two individuals out of the entire venire that was late. Number two, based on my observation as an officer of the court she appeared to be asleep. Now, I know she's got a problem with one of her eyes but appeared to have both eyes closed during— every time I'd look back Judge. Now, she testified she had stitches out today. Based again on my observation, there's something green seeping out of her eye and it's swollen quite a bit. When asked at the bench whether she'd have trouble reading she said that she might have trouble reading. Based on all those reasons, Judge, that's why we would strike her.

The co-prosecutor also said:

> And I would just add that when we were up at the bench and you were asking what other jurors were left and who was here to be a juror on the case there were several individuals that raised their hand. She didn't. She seemed completely out of it. She obviously wasn't paying attention and, you know, can't follow instructions.

The trial court then noted that Ms. Skaggs only showed up for court after someone from the clerk's office called her.

The following exchange then took place:

> [GRAHAM'S COUNSEL]: I would like to say that the State's excuse is pre-textual and inadequate. General Chitwood indicates

that at our bench conference that he was concerned about her eyesight yet if I am—I may be mistaken at this late moment, we have a juror who complained early on that she had motion sickness and if I'm not mistaken that's juror number 4 and she's still on the panel so we have someone with some concern about her being able to see. She said she may close her eyes but she can always listen to the audio. That[ ] was what was discussed at the bench. The same thing can apply to the juror in question now. Also, General Chitwood commented that she came in late. Judge, again, at this late date I may very well be confused but if I'm not mistaken juror number 10, who we just sat, also came in late because you had to swear her but yet she made the box. I would say that consequently those two excuses are inadequate because we have jurors. The juror in question states at [the] bench that she sees without glasses, she can see out of one of her eye[s]. Mr. Chitwood indicates that he saw her with her eyes shut. I don't know that that's any indication that she was asleep. Certainly that would have been a question to her. I have no knowledge of that. She answered, came up and seems quite lively and I don't see why she needs to be struck and, Your Honor, [Defendant Murchison's counsel] joined into my objection.

\* \* \*

[MURCHISON'S COUNSEL]: Your Honor, I have very little to add other than to say that it was apparent to me that Ms[.] Skaggs was in complete control of her faculties at the bench conference. She answered your questions promptly and clearly and thoughtfully and intelligently.

\* \* \*

[PROSECUTOR]: Number one, Judge, I don't think the defense counsel touched on this, [co-prosecutor's] point when you asked the individuals in the audience who were potential jurors it was my understanding she did not raise her hands like the others did. She sat there, either did not understand and I think you asked—you had to ask it twice and then she still did not raise her hand but the other individuals did. The Court I think can take judicial notice of that fact, that she either did not understand your question, could not hear your question or was not paying attention or whatever reason, was the only one of the potential jurors who was nonresponsive to that. Secondly, the individual who allegedly has motion sickness, I have asked her twice in voir dire about that extensively and she said that she could watch it and if it became a problem she'd raise her hand and I still have concerns about it, however, I mean that's what they are, concerns, but that's different than someone who physically will

11

not be able to read, which is what she stated at the bench. She's going to have trouble reading is what this juror stated and again, while she was late and another juror was late if that was all that would not be the reason we were striking her, it's the totality of it. She was late. She was nonresponsive to your questions. She says she'd have trouble reading and I think the Court could take judicial notice of this, she has a swollen eye. She said she just had her stitches removed today and something is seeping from her eye and based on all of that, Judge, I would strike any juror who looked like that on the day of trial.

THE COURT: All right, well let me just state a few things for the record. First of all I did call Ms. Skaggs in the first group of 18. She was not here when I called her name and I gave it to the clerks and the clerks informed me that they contacted her and so she appeared later. The other individual I remember specifically coming in during the early stages when the first 18 were in the box and she was just a few minutes later but for just the record I mean I'm in a position of observing that. The other thing that I would state too for the record, certainly I think—as I said a moment ago, Ms[.] Skaggs is the only African [-] American that I saw in the venire and of course both Defendant Graham and Defendant Murchison are both African [-] American so I do note that for the record as well. Now, the State has indicated that she was late. I mean I think it's clear from looking at the witness that her right eye, in fact that was what alerted me to ask questions, call her up individually, was her right eye is essentially swollen shut. I mean it's very puffy and I think both counsel for the defense would agree with that, would you not, [Graham's counsel]?

[GRAHAM'S COUNSEL]: Yes, Judge, it appears puffy to me.

THE COURT: And almost to the point where it's closed shut.

[GRAHAM'S COUNSEL]: I saw that, Judge, yes.

THE COURT: I mean obviously there's no picture that we have here but I mean I want to make sure that I'm not seeing something that the attorneys are not seeing as well. The State has indicated that she was later, had to be called in. Their observations of her while she was in court was that she appeared to be asleep, that she did not respond and I think that was clear and the Court observed that as well when I was asking questions about the remainder of the panel and she didn't appear to acknowledge that she was a juror until after I'd asked at least twice; maybe three times. I maybe even called her name to double check. Also, she has indicated that she—I asked her

if she might have any problems serving and she said she may have trouble seeing; again that's something that she personally acknowledged. Now, I inquired further about glasses and other things but that was a statement that she had made. In my opinion the State has set out what I consider to be a clear reasonably specific and a challenge reasonably related to a particular case to be tried. I mean this is a case that's going to involve lots of witnesses. It's going to go for several days. I mean it's not just a one day case but at least for another five days; also the fact that there's going to be a lot of video because we've already talked about that that will be involved in this case and in my opinion the defense [sic] has established what I consider to be a neutral reason for that and of course—

* * *

THE COURT: The State, excuse me, the State has established a neutral reason. Now, I will point out, too, that I mean while I certainly acknowledge what [Graham's Counsel] said that in a sense because you strike the only African [-] American on the panel that in turn it establishes a prima facie or at least an inference that there is discrimination that's occurred, other than that I've not seen anything else raised with regard to the way the State has proceeded in this case or otherwise that would seem to indicate that the State had a discriminatory intent in striking an African [-] American[ ] from the panel.

[In] *Batson,* the United States Supreme Court held that a state's use of peremptory challenges to intentionally exclude potential jurors of the defendant's race violates the defendant's right to equal protection. *Batson,* 476 U.S. at 89; 106 S.Ct. at 1719. "A criminal defendant may object to a race-based exclusion of a juror, effected through peremptory challenges, regardless of whether the defendant and the excluded juror share the same race." *State v. Carroll,* 34 S.W.3d 317, 319 (Tenn. Crim. App. 2000) (citing *Powers v. Ohio,* 499 U.S. 400, 415–16, 111 S.Ct. 1364, 1373–74, 113 L.Ed.2d 411 (1991)).

The procedure for invoking a *Batson* challenge was discussed in *Carroll* as follows:

*Batson* provides a three step process for the evaluation of racial discrimination claims in jury selection. First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995); *Batson,* 476 U.S. at 96–98, 106 S.Ct. 1712, 1722–24. If the defendant satisfies this initial burden, the burden then shifts to the prosecutor to articulate a race-neutral explanation for excluding the

13

venire member in question. *Purkett,* 514 U.S. at 767, 115 S.Ct. 1769, 1770–71; *Batson,* 476 U.S. at 94, 106 S.Ct. 1712, 1721. Third, the trial court must determine whether the defendant has met his burden of proving purposeful discrimination. [*Batson*], 476 U.S. at 97–98, 106 S.Ct. 1712, 1723–24; *Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991). In making its determination of whether use of a peremptory challenge was discriminatory, the trial court must articulate specific reasons for each of its factual findings. *Woodson,* 916 S.W.2d at 906. The trial court's findings are imperative for rarely will a trial record alone provide a legitimate basis from which to substitute an appellate court's opinion for that of the trial court. Thus, on appeal, the trial court's finding that the State excused a venire member for race-neutral reasons will not be reversed unless it is clearly erroneous. *See Woodson,* 916 S.W.2d at 906 (citations omitted).

*Carroll,* 34 S.W.3d 319–20.

As the United States Supreme Court observed in *Hernandez v. New York,* "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges [without prompting] and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866. The issue in the second step of the *Batson* process rests upon "the facial validity of the prosecutor's explanation." *Id.* at 360, 111 S.Ct. at 1866. "A neutral explanation ... means an explanation based on something other than the race of the juror." *Id.* "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* In the second phase of the inquiry, the prosecutor's explanation is not required to be "persuasive or even plausible." *Puckett,* 514 U.S. at 768, 115 S.Ct. at 1771.

In the case *sub judice,* the prosecutor offered several explanations for the challenge. First, the prosecutor, along with the trial court, noted that Ms. Skaggs was late to court. The trial court had observed that Ms. Skaggs did not show up to court until someone from the clerk's office called her. Second, the prosecutor pointed out that Ms. Skaggs appeared to be asleep during voir dire. Third, the prosecutor noted that Ms. Skaggs had stitches removed from her eye before court, and there was something green seeping out of her eye, which was swollen. Ms. Skaggs had also indicated that she might have trouble reading due to her eye-related problems. The co-prosecutor also pointed out that when the trial court asked what other jurors were left, and who was there to be a juror, Ms. Skaggs did not raise her hand, and she "seemed completely out of it," that she obviously was not paying attention, and "can't follow directions."

The determination of a discriminatory intent on the part of the prosecutor "largely will turn on evaluation of credibility." *Baston,* 476 U.S. at 98 n.21, 106 S.Ct. at

14

1724 n.21. "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Hernandez,* 500 U.S. at 365, 111 S.Ct. at 1869.

We conclude that the prosecutor's basis for the use of a peremptory challenge against Ms. Skaggs was sufficiently race-neutral to withstand a *Batson* challenge. The trial court accepted this racial neutral reason for exercising a peremptory challenge. Determination of a discriminatory intent depended largely on the evaluation of the prosecutor's credibility in this case. Defendant Murchison has not shown that the trial court erred in accrediting the State's racially neutral explanation for excusing the prospective juror. Defendant is not entitled to relief on this issue.

*Murchison I*, at *12–16.

The Court agrees with the TCCA that Petitioner is not entitled to relief for this claim. Petitioner generally asserts in his memorandum in support of his petition for habeas corpus relief that the prosecution struck Ms. Skaggs "without proper reasoning" [Doc. 2-1 at 4]. But the record does not support this assertion. Specifically, while the trial court found that the prosecutor's act of striking Ms. Skaggs, the only potential juror that was African-American, created an inference of prejudice such that it shifted the burden to the prosecutor to set forth a race-neutral reason for striking her under *Batson*, the trial court then found that the prosecutor's multiple race-neutral reasons for striking Ms. Skaggs from the jury pool, some of which the trial court raised *sua sponte* based on its own impression of Ms. Skaggs's apparent health issues and all of which the record very clearly describes and supports, were valid. Petitioner does not allege or point to any evidence in the record suggesting that the prosecution's reasons for striking Ms. Skaggs were pretext for discrimination, or that the trial court had any reason to believe that the prosecution's reasons for striking her were not legitimate. And the TCCA reasonably applied *Batson* and other relevant case law to the evidence in the record to find that the trial court's acceptance of the prosecutor's race-neutral reasons for Ms. Skaggs did not violate Petitioner's Equal Protection rights.

15

Accordingly, Petitioner has not met his burden to establish that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and he is not entitled to § 2254 relief for this claim.

### 3. Claims 3 and 4– Exhausted Ineffective Assistance of Counsel Claims

In Claims 3 and 4, Petitioner asserts that the state courts erred in finding that his counsel appropriately conveyed plea offers to him and provided effective assistance regarding his mental capacity and/or the presentence report [Doc. 2 at 7; Doc. 2-1 at 5–6]. The Court will address these claims in turn after setting out the applicable standard.

### a. Standard

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. A petitioner has the burden of proving ineffective assistance of his counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.

16

A party asserting an ineffective-assistance-of-counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and, if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 69. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### b. Claim 3–Plea Offers

Petitioner claims that the state courts erred in finding that his counsel had appropriately communicated plea offers to him [Doc. 2 at 7; Doc. 2-1 at 5]. Petitioner raised this claim to the TCCA in his appeal of the denial of his petition for post-conviction relief, and the TCCA denied it by stating as follows:

> The Petitioner asserts that Counsel did not directly convey to him two plea offers from the State. The State responds that the Petitioner has failed to prove this claim by clear and convincing evidence. The trial court accredited Counsel's testimony that he conveyed both plea offers multiple times and encouraged the Petitioner to accept both offers. As to this issue, the post-conviction court made the following findings:

> [T]his Court accredits the testimony of [Counsel]. I do not accredit
> the testimony of [the Petitioner]. I find his testimony to be
> incredible. [Counsel's] testimony was that he did in fact convey the
> plea offers, urged [the Petitioner] to accept the plea and [the
> Petitioner] was adamant that he was not going to do that and Exhibit
> 3 [Counsel's notes] corroborates and Exhibit 4 [Counsel's letters to
> the Petitioner] corroborates that testimony.

The post-conviction court accredited counsel's testimony and found that Counsel conveyed to the Petitioner the State's offers. The record does not preponderate against the findings of the post-conviction court. Counsel testified that he did not want to try the case based upon the State's overwhelming evidence against the Petitioner. This proof included a CI's testimony, recordings, and law enforcement testimony. At Counsel's inquiry, the State initially declined to make an offer but did so on December 18, 2012, as documented in Counsel's notes. Counsel was unable to make contact with the Petitioner by telephone so instead sent a letter outlining the offer and asking the Petitioner to call him. This letter was an exhibit at the post-conviction hearing, and the Petitioner confirmed that the mailing address was correct. The Petitioner called twice in response to the request in the letter and on the second occasion, the Petitioner and Counsel discussed the State's offer. Counsel also testified to a second offer in March 2013, that the Petitioner also declined. Other than his own testimony, the Petitioner failed to provide any evidence which indicates that Counsel did not convey the State's offers. The post-conviction court accredited Counsel's testimony, and this Court will not re-weigh the credibility findings of the post-conviction court. *See Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997).

Accordingly, we conclude that Counsel conveyed to the Petitioner both of the State's plea offers. The Petitioner has failed to show that Counsel was deficient as to the settlement offers and, therefore, is not entitled to relief on this issue.

*Murchison II*, at *11.

The TCCA correctly determined that Petitioner did not establish that counsel was deficient in conveying plea offers to him. In his petition, Petitioner argues that, while his testimony contradicted his counsel's regarding their plea offer discussions, the record contains no proof of any meetings between the prosecutor, Petitioner, trial counsel, and the trial judge to discuss plea offers [Doc. 2-1 at 5]. But to the extent that Petitioner requests that the Court accept his testimony that he and his counsel did not discuss any plea offers, rather than his counsel's testimony that they

18

repeatedly did do so, this Court, like the TCCA, will not second-guess the post-conviction court's finding that Petitioner's trial counsel's testimony on this issue was more credible than Petitioner's. *See Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (noting that the reviewing court "is not as well positioned as the trial court is to make credibility determinations"). And as trial counsel testified that he conveyed the two plea offers to Petitioner and repeatedly discussed them with Petitioner, and trial counsel's notes corroborated that testimony, Petitioner has failed to demonstrate that his counsel was deficient with regarding to conveying plea offers to him.

Moreover, Petitioner's argument that the record contains no proof of any meetings between the prosecutor, Petitioner, trial counsel, and the trial judge to discuss plea offers does not entitle him to habeas corpus relief. First, Petitioner cites no case law or applicable rule that required trial counsel to discuss plea offers with the prosecutor and the judge to provide effective assistance to Petitioner, and the Court is unaware of any such case law or rule. Further, as Petitioner did not raise this claim under this theory with the TCCA and cannot do so now, he procedurally defaulted it and has set forth no grounds to excuse that default.

Accordingly, Petitioner has not met his burden to establish that the TCCA based its denial of this claim on an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and he is not entitled to § 2254 relief for this claim.

### c. Claim 4–Mental Capacity and Presentence Report

Petitioner next claims that the state courts erred by not resolving questions regarding his mental competency [Doc. 2-1 at 6]. Petitioner further asserts that the state courts enhanced this error by "allowing a mysterious 'written statement'" to affect his sentencing process [*Id.*]. As Petitioner raised these arguments to the TCCA in his appeal of the denial of his post-conviction petition by claiming that his trial counsel was ineffective for (1) not thoroughly investigating or

19

using his mental capacity to argue for sentence mitigation and (2) failing to review the presentence report with him and/or object to unverified statements therein [Doc. 12-26 at 26], these are the only arguments Petitioner properly exhausted, and therefore the only arguments that the Court will address on the merits.

The TCCA denied Petitioner relief for these claims by stating as follows:

The Petitioner argues that Counsel's failure to "investigate or use the Petitioner's mental capacity as a mitigating circumstance" was deficient. The State responds that Counsel had no cause for concern regarding the "mental deficits" and the Petitioner provided "no credible evidence of any mental deficiency" at the post-conviction hearing.

The post-conviction court made the following findings:

[Counsel] testified that [the Petitioner] was, he didn't use the word savvy, but that's the impression that the Court took especially in dealing with the bond issue, that [the Petitioner] understood some very complex legal issues that were being presented by the State in an effort to revoke his bond. [Counsel] testified that [the Petitioner] understood those issues and was able to assist him in coming[.]

The evidence does not preponderate against the post-conviction court's findings. It is well-established that

the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions ... And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Strickland*, 466 U.S. at 691. Counsel testified that the Petitioner did not exhibit any signs or indications of impairment. The Petitioner demonstrated understanding of complex issues related to the bond revocation and contributed to his defense. His communication with Counsel raised no concerns; therefore, Counsel did not have reason to believe that an assessment was needed or would prove beneficial. Other than the Petitioner's assertions that he was assigned to special education classes in grade school, there is no evidence to support an alleged mental condition. As such, the Petitioner has failed to carry his burden of proving this allegation by clear and convincing evidence. He is not entitled to relief.

*       *       *

20

The Petitioner contends that Counsel should have objected to the introduction of the presentence report during sentencing. He asserts that the presentence report contained statements that he did not make. The State responds that the Petitioner has failed to establish that Counsel was deficient or any resulting prejudice.

The post-conviction court made the following findings:

> [The Petitioner] testified that he didn't know what a presentence report was, that he'd never heard of a presentence report. However, [the Petitioner] did testify that he met with the probation officer, gave her information about his family, gave her information about his employment and his education, and told her that he had learning disabilities. Once again [the Petitioner] is telling the Court two different things, one right after the other, which are contradictory. [The Petitioner] acknowledged favorable information that he gave to the probation officer was included in that report. [The Petitioner] denied that the damaging information that was included in the report was given by him.

The Petitioner does not identify which statement or statements in the presentence report are false and should not have been in the report. Further, the Petitioner offered no proof in support of his allegation that the challenged statement or statements were false. *See Black v. State*, 794 S.W.2d 752, 757. As such, we conclude that the Petitioner has failed to carry his burden of proving this allegation by clear and convincing evidence. He is not entitled to relief.

*Murchison II*, at *12–13, *15.

The Court agrees with the TCCA that Petitioner is not entitled to relief for these claims.

First, while Petitioner faults his counsel for not fully investigating his mental competency and not raising his mental competency to argue for mitigation of his sentence, he cites no evidence from which the Court could find that his counsel's "investigation or lack thereof" of Petitioner's mental capacity was unreasonable, such that he would be entitled to habeas corpus relief. *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010). Petitioner's counsel testified that he had no

reason to question Petitioner's mental capacity and, to the contrary, was "really surprised how well" Petitioner had understood "very involved" bond issues prior to trial [Doc. 12-23 at 77].[2]

In support of this claim, Petitioner cites information he provided for his presentence report regarding, among other things, a past learning disability, his childhood educational and psychiatric care history, and the fact that he qualified for disability in 1997 [Doc. 2-1 at 6–7; Doc. 12-11 at 23–24]. But Petitioner presents no evidence demonstrating that his counsel knew or should have known of this background information at or before his sentencing, nor does he establish that this background information would have qualified as a mitigating factor in his sentencing under Tennessee law, and this information does not appear to fit into any of the enumerated sentencing mitigation factors under Tennessee law. Tenn. Code Ann. § 40-35-113.[3] Thus, Petitioner has not established that counsel was deficient for failing to raise any issues regarding Petitioner's mental capacity, or that any such deficiency prejudiced him.

Additionally, Petitioner has not stated what portion(s) of the presentence report his counsel should have objected to but did not in a manner that was deficient, nor has he set forth any facts from which the Court can find that counsel's failure to object to that presentence report prejudiced Petitioner.

---

[2] As set forth above, Petitioner filed various documents with this Court, apparently to attempt to establish issues regarding his mental capacity [Docs. 18, 19]. But nothing in the record suggests that these documents were before the state court, and as Petitioner has not set forth grounds for the Court to expand the record, this Court's review "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The Court therefore does not consider the information in Petitioner's manual filings.

[3] One of the enumerated sentencing mitigating factors under Tennessee law is that "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense." Tenn. Code Ann. § 40-35-113(8) (effective Aug. 11, 2010). But Petitioner does not argue or cite any evidence to support the Court finding that any of his alleged mental competency limitations, the most recent of which he alleges existed in 1997 to support his placement on disability, "significantly reduced" his culpability for the crimes than occurred in 2011, such that this factor may have applied.

Accordingly, Petitioner has not met his burden to establish that the TCCA denied these claims based on an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and he is not entitled to § 2254 relief for this claim.

### 4. Claim 5–Cumulative Error

Petitioner lastly claims that the cumulative effect of his claims entitles him to habeas corpus relief [Doc. 2-1 at 7]. However, "[t]he Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)). Moreover, the Court has not found that any of Petitioner's claims have any merit, and where "individual claims are all essentially meritless, [a petitioner] cannot show that the cumulative error[s] violated his constitutional rights." *Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)). Accordingly, Petitioner is not entitled to relief under § 2254 on this claim.

### III. MOTION TO AMEND

On August 9, 2021, Petitioner filed a motion to amend/revise his § 2254 petition [Doc. 26]. Respondent did not timely respond to that motion, and the Court denied the motion based on its finding that the claims therein are time-barred [Doc. 27]. However, after its full review of the remainder of Petitioner's claims, the Court ordered Respondent to file a response to that motion and allowed Petitioner time to file a reply [Doc. 28]. Respondent filed a response in opposition to the motion [Doc. 32]. Petitioner did not file a reply, and his time for doing so has passed [Docs. 28, 31].

In his reply, Respondent argues that Petitioner's proposed claims in his motion to amend his petition are untimely and procedurally defaulted [Doc. 32]. For the reasons the Court set forth

in its previous order [Doc. 27] and the reasons set forth in Respondent's response [Doc. 32], the Court again finds that Petitioner's proposed claims in his motion to amend are untimely and therefore futile.

Additionally, the Court agrees with Respondent that Petitioner procedurally defaulted the proposed claims set forth in this motion by not raising them with the TCCA [*Compare* Doc. 26 *with* Docs. 12-14, 12-26], and has not set forth sufficient grounds to excuse this procedural default. Thus, Petitioner's motion to amend his petition [Doc. 26] will be **DENIED** and the Court will not consider the merits of the proposed claims therein.

## IV.    CONCLUSION

For the reasons set forth herein, the Court will not consider Petitioner's manual filings, Petitioner's requests for § 2254 relief will be **DENIED**, Petitioner's motion to amend his complaint [Doc. 26] will be **DENIED**, and this action will be **DISMISSED**.

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal.  Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the

24

petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate the Court's finding that Petitioner procedurally defaulted his claim regarding "mail away rights" and any new theories for claims that he did not raise to the TCCA. Further, reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to his *Batson* claim, his exhausted ineffective assistance of counsel claims, or his cumulative error claim, such that they would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

ENTER:

s/J. RONNIE GREER
_____
UNITED STATES DISTRICT JUDGE